[Cite as *State v. Marcel-Rene*, 2015-Ohio-402.]

STATE OF OHIO       )                  IN THE COURT OF APPEALS
                              )ss:             NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

STATE OF OHIO                    C.A. No.      27296

      Appellee

      v.                            APPEAL FROM JUDGMENT
                                     ENTERED IN THE
PAUL D. MARCEL-RENE         COURT OF COMMON PLEAS
                                     COUNTY OF SUMMIT, OHIO
      Appellant                 CASE No.     CR 13 11 3124

DECISION AND JOURNAL ENTRY

Dated: February 4, 2015

HENSAL, Presiding Judge.

{¶1}    Paul Marcel-Rene appeals his convictions for procuring, promoting prostitution, and failure to provide notice of change of address in the Summit County Court of Common Pleas. For the following reasons, this Court affirms.

I.

{¶2}    On November 6, 2013, state and federal law enforcement officers conducted a prostitution sting operation at a hotel in Green. During the operation, an undercover officer contacted a prostitute named E.C. and arranged to meet her at the hotel. Officers who were maintaining surveillance of the hotel parking lot noticed that the vehicle that brought E.C. to the hotel remained in the area after it dropped her off. After arresting E.C. a deputy stopped the vehicle, which was being driven by Mr. Marcel-Rene. When the deputy asked where he was going, Mr. Marcel-Rene told him that he had gotten his directions mixed up heading to Wal-Mart. The deputy arrested him for procuring.

{¶3}     Because of a prior conviction, Mr. Marcel-Rene had a duty to register his address every 90 days with the Summit County Sheriff's Office.  He also had to provide notice of any change in his address.  From December 2012 to June 2013, Mr. Marcel-Rene registered an address on North Adams Street in Akron.  Around the time of his arrest, however, the Sheriff's Office received a tip that he had been living in a house on Hammel Street.  At the Hammel Street address detectives met a woman who said that she had been Mr. Marcel-Rene's girlfriend for several months.  At trial, the woman testified that she and her children began living at the house with Mr. Marcel-Rene in August 2013.  She said that Mr. Marcel-Rene had his clothes at the house, that he bought a couch and vacuum cleaner for the house, that he paid for cable and internet service for them, and that he slept at the house "[p]retty much every night."  She ended their relationship, however, when she learned that he was married.  The State also called Mr. Marcel-Rene's sister, who testified that, when he first purchased the house on Hammel Street, he drove her by it and told her that he was "fixing it up as his love nest for him and Ms. Reese."

{¶4}     The Grand Jury indicted Mr. Marcel-Rene for failure to provide notice of change of address, procuring, and promoting prostitution.  A jury found him guilty of the offenses, and the trial court sentenced him to a total of seven years and six months imprisonment.  Mr. Marcel-Rene has appealed, assigning three errors.

II.

ASSIGNMENT OF ERROR I

THE STATE'S EVIDENCE WAS INSUFFICIENT TO CONVICT PAUL OF PROMOTING PROSTITUTION AND PROCURING.

{¶5}     Mr. Marcel-Rene argues that the State failed to present sufficient evidence that he knowingly procured a prostitute for another or that he supervised, managed, or controlled E.C.'s work.  According to him, while he knew E.C. was a prostitute, he never spoke to her clients,

arranged her meetings, or even knew the details of her business. He argues that he merely provided a taxi service for her when she had a client.

{¶6} Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In making this determination, we must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶7} The jury found Mr. Marcel-Rene guilty of procuring under Ohio Revised Code Section 2907.23(A)(2) and promoting prostitution under Section 2907.22(A)(2). Section 2907.23(A)(2) provides that "[n]o person, knowingly and for gain, shall * * * [p]rocure a prostitute for another to patronize, or take or direct another at the other's request to any place for the purpose of patronizing a prostitute." Section 2907.22(A)(2) provides that "[n]o person shall knowingly * * * [s]upervise, manage, or control the activities of a prostitute in engaging in sexual activity for hire[.]" "Prostitute" means "a male or female who promiscuously engages in sexual activity for hire, regardless of whether the hire is paid to the prostitute or to another." R.C. 2907.01(D). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

**{¶8}** E.C. testified that she became a prostitute to support her heroin addiction. She met Mr. Marcel-Rene through a website that she used to set up "dates" with men. Mr. Marcel-Rene had a listing on the website offering rides to and from a location for a flat fee. According to E.C., she began using Mr. Marcel-Rene's services because she felt comfortable with him and he would wait for her during her dates.

**{¶9}** E.C. testified that, on November 6, 2013, Mr. Marcel-Rene contacted her to see if she was available for a date. Mr. Marcel-Rene told her that someone had contacted him about hiring a certain prostitute, but the woman was unavailable, so he wanted to know if E.C. could substitute. According to E.C., she had previously told Mr. Marcel-Rene that, if he knew of any work, to send it her way. E.C. agreed to the date, and paid Mr. Marcel-Rene his customary fee for transporting her to the hotel where law enforcement had set up the sting operation. E.C. also testified that Mr. Marcel-Rene had taken pictures of her for her internet advertisements and told her that he would edit them for her. The State also presented a copy of text messages that E.C. exchanged with Mr. Marcel-Rene. The conversations include Mr. Marcel-Rene asking whether E.C. was available for work and an offer to send E.C. the telephone number of "clients needing providers."

**{¶10}** Viewing the evidence in a light most favorable to the prosecution, we conclude that it is sufficient to support Mr. Marcel-Rene's convictions. Regarding the procuring charge, there was evidence that Mr. Marcel-Rene forwarded the telephone numbers of multiple men to E.C. so that they could engage in sexual activity for hire. Regarding the promoting prostitution charge, there was evidence that Mr. Marcel-Rene assisted E.C. with her internet postings, that he helped to arrange dates for her, that he transported her to dates and waited outside until she was finished, and that he received a fee from E.C. after each date. This evidence is sufficient to

establish that Mr. Marcel-Rene supervised or managed the activities of a prostitute under Section 2907.22(A)(2). *See State v. Schultz*, 11th Dist. Lake No. 2003-L-156, 2005-Ohio-345, ¶ 42-43.

{¶11} While he did not separately assign it as error, Mr. Marcel-Rene also argues that, if merely driving someone to a prostitution appointment is sufficient to commit promoting prostitution, the statute is overbroad. Because that is not the only fact that supports his conviction, however, we reject his constitutional argument. Mr. Marcel-Rene's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

PAUL'S CONVICTIONS FOR NOTICE OF CHANGE OF ADDRESS, PROMOTING PROSECUTION (SIC) AND PROCURING ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶12} Mr. Marcel-Rene next argues that his convictions are against the manifest weight of the evidence. If a defendant asserts that his convictions are against the manifest weight of the evidence:

> [A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

{¶13} Regarding the procuring and promoting prostitution offenses, Mr. Marcel-Rene's argument is "the same as the previous Assignment of Error," which challenged the sufficiency of

the evidence. In light of the limited nature of his argument and our determination that there is sufficient evidence to support his convictions, we conclude that Mr. Marcel-Rene has failed to establish that his procuring and promoting prostitution offenses are against the manifest weight of the evidence.

{¶14} Regarding the notice of change of address offense, Mr. Marcel-Rene argues that there was no credible evidence that he ever moved out of the permanent residence that he shared with his wife. He argues that the woman who the officers met at the Hammel Street house was not credible because she was angry with him after he attempted to sell the house after they broke up, even though she was still living there. He argues that his sister was not credible because she lived in a house that he managed for a company and got angry at him after he attempted to evict her for not paying for repairs. He also notes that his sister never saw him at the Hammel Street house.

{¶15} "A jury is free to believe or reject the testimony of each witness, and issues of credibility are primarily reserved for the trier of fact." *State v. Wilson*, 9th Dist. Summit No. 26683, 2014-Ohio-376, ¶ 31, quoting *State v. Rice*, 9th Dist. No. 26116, 2012-Ohio-2174, ¶ 35. "A conviction is not against the manifest weight because the jury chose to credit the State's version of the events." *Id.*, quoting *State v. Minor*, 9th Dist. Summit No. 26362, 2013-Ohio-558, ¶ 28. Upon review of the record, we cannot say that the jury clearly lost its way when it credited the testimony of Mr. Marcel-Rene's ex-girlfriend and sister. Mr. Marcel-Rene's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE TRIAL COURT'S SENTENCE IS CLEARLY AND CONVINCINGLY CONTRARY TO LAW.

**{¶16}** Mr. Marcel-Rene's final argument is that the trial court gave him an improper sentence because it did not properly weigh the seriousness and recidivism factors outlined in Section 2929.12. He argues that his crimes do not implicate any of the factors that make an offense more serious than other offenses. He also argues that he fully complied with his registration requirements and had no felony record for several years before the events of this case.

**{¶17}** Although Mr. Marcel-Rene argues for a different standard, this Court has consistently applied a two-step approach when reviewing a trial court's sentence. *State v. Henderson*, 9th Dist. Summit No. 27078, 2014-Ohio-5782, ¶ 43. "First, [we] must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law." *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, ¶ 26. If the sentence is not contrary to law, we review the trial court's decision in imposing a term of imprisonment for an abuse of discretion. *Id.* An abuse of discretion indicates that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶18}** Section 2929.12(B) identifies the seriousness factors that a trial court must consider before imposing sentence. They are:

(1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.

(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.

(3) The offender held a public office or position of trust in the community, and the offense related to that office or position.

(4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.

(5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.

(6) The offender's relationship with the victim facilitated the offense.

(7) The offender committed the offense for hire or as a part of an organized criminal activity.

(8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.

(9) If the offense is a violation of section 2919.25 or a violation of section 2903.11, 2903.12, or 2903.13 of the Revised Code involving a person who was a family or household member at the time of the violation, the offender committed the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent, guardian, custodian, or person in loco parentis of one or more of those children.

R.C. 2929.12(B). The court must also consider "factors indicating that the offender is likely to commit future crimes[,]" which are:

(1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing ; was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code ; was under post-release control pursuant to section 2967.28 or any other provision of the Revised Code for an earlier offense or had been unfavorably terminated from post-release control for a prior offense pursuant to division (B) of section 2967.16 or section 2929.141 of the Revised Code; was under transitional control in connection with a prior offense; or had absconded from the offender's approved community placement resulting in the offender's removal from the transitional control program under section 2967.26 of the Revised Code.

(2) The offender previously was adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code prior to January 1, 2002, or pursuant to Chapter 2152. of the Revised Code, or the offender has a history of criminal convictions.

(3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code prior to January 1, 2002, or pursuant to Chapter 2152. of the Revised Code, or the offender has not responded favorably to sanctions previously imposed for criminal convictions.

(4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse.

(5) The offender shows no genuine remorse for the offense.

R.C. 2929.12(D).

{¶19} At sentencing, the trial court noted that, in West Virginia in 2003, Mr. Marcel-Rene was convicted of filming or photographing a minor in explicit sexual conduct. In 2006, he was convicted of failing to register in West Virginia. The court also found that there were warrants out for his arrest in Massachusetts and Connecticut for larceny. When Mr. Marcel-Rene spoke, he did not show any remorse for the offenses, protesting his innocence of the charges instead. Upon review of the record, we conclude that Mr. Marcel-Rene has failed to establish that the court did not follow all "applicable rules and statutes in imposing the sentence" or that it acted unreasonably, arbitrarily, or unconscionably when it determined the length of his sentences. *Kalish* at ¶ 26. Mr. Marcel-Rene's third assignment of error is overruled.

III.

{¶20} Mr. Marcel-Rene's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. The trial court did not err when it imposed his sentence. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

---

JENNIFER HENSAL
FOR THE COURT

WHITMORE, J.
MOORE, J.
CONCUR.

APPEARANCES:

GREGORY A. PRICE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.